**Arner Estate**

*Norman E. Donoghue, 2d,* and *Stephen M. Cushmore,* of *Dechert, Price & Rhoads,* for accountant.

*James W. Sutton,* for Commonwealth of Pennsylvania, as parens patriae.

KLEIN, A. J., March 12, 1974.—This is a perpetual charitable trust, in memory of testatrix' father, Jonas Arner. Income is to be accrued until sufficient to pay the admission fee into the Presbyterian Home for Aged Couples and Singlemen (now the Presbyterian Home for Aged Couples and Aged persons), of a man selected by the Holy Trinity-Bethlehem Presbyterian Church (formerly the Bethlehem Presbyterian Church).

At the audit, the court was informed that the present principal value of the trust is about $3,000 and that the admission fee to the Presbyterian Home has, at times, risen faster than income can be accumulated. For this reason, and because the trust has been endangered by the provisions of the Tax Reform Act of 1969, 83 Stat. 487, 26 U. S. C., P. L. 91-172, the accountant takes the position that the purpose for which the trust was created has become "impractical of fulfillment" within the meaning of section 6110 of the Probate, Estates and Fiduciaries Code of June 30, 1972, no. 164, 20 PS §6110. Girard Trust Bank, surviving trustee, has, therefore, presented a petition to terminate a charitable trust under section 6110 of the Probate, Estates and Fiduciaries Code, proposing that the entire fund be awarded to the Presbyterian Home for Aged Couples and Aged Persons, to be held as a segregated fund, the accrued and future net income to be used each year to defray the admission cost of needy

men to the said home, such men to be selected by the Holy Trinity-Bethlehem Presbyterian Church, with an appropriate mention of Jonas Arner in whose memory the trust was established.

Mr. Donoghue informed the court that according to the information available to him the finance committee of the home would not agree to accept the fund as a continuing trust but would prefer that it be added to its Restricted Endowment Fund. Neither Mr. Sutton, representing the Commonwealth of Pennsylvania as parens patriae of charities, nor the accountant, had any objection to this proposal.

All parties in interest are stated to have received notice of this audit. Proof of compliance with Rule 5, Section 5, of the Supreme Court O. C. Rules, relating to notice to the Commonwealth of Pennsylvania in cases involving charitable gifts, is annexed.

Section 6110 of the Probate, Estates and Fiduciaries Code reads, in pertinent part, as follows:

"Except as otherwise provided by the conveyor, if the charitable purpose for which an interest shall be conveyed shall be or become indefinite or impossible or impracticable of fulfillment, . . . the court may, on application of the trustee or of any interested person or of the Attorney General of the Commonwealth, after proof of notice to the Attorney General of the Commonwealth when he is not the petitioner, order an administration or distribution of the estate for a charitable purpose in a manner as nearly as possible to fulfill the intention of the conveyor, whether his charitable intent be general or specific."

The propriety of court action to save a charitable trust endangered by the Tax Reform Act of 1969 has been recognized by this court recently in Hering Trust, 22 Fiduc. Rep. 295 (1972).

Furthermore, in Brown Trust, 7 Fiduc. Rep. 517 (1957), this court recognized that small perpetual trusts

for lofty purposes in some cases are better terminated in favor of a charity. In that case, the trust fund amounted to $1,000 and the income beneficiary was a hospital. This court stated, at page 518:

"This case clearly demonstrates the folly of establishing miniscule perpetual charitable trusts. In spite of the lofty motives of the testator, his testamentary plan, simple as it is, has proven to be wholly impractical . . . The plan . . . has by reason of its small size proven to be unworkable and has failed of its purpose."

The result was that this court ordered the entire trust fund paid outright to a charity. In closing, this court added, at page 521:

"The administration of this trust would obviously be unprofitable for any fiduciary, individual or corporate. The increasing complexities of trust management today and the many forms which must be filed to comply with the tax laws and other governmental regulations would constitute a real nuisance in a trust of this size. No one can be asked reasonably to assume responsibility for investing and reinvesting the corpus of this trust and keeping the records necessary to comply with its provisions for the recompense it could possibly receive. Even if the entire income were used to compensate the trustee, it would still be an undesirable assignment. Furthermore, this trust, as presently constituted, could not, under any circumstances, furnish any worthwhile or substantial benefits to any charity that might be selected. To preserve this trust would be both silly and impractical. The balances as shown by the account will accordingly be awarded outright to the Hahnemann Hospital."

The instant case presents a similar situation. The Tax Reform Act of 1969 and the change in economic conditions since the trust was established some 50 years ago unquestionably render this trust "impractical of fulfillment" within the meaning of section 6110 of

the Probate, Estates and Fiduciaries Code. The auditing judge has, therefore, this day signed a decree granting the prayer of the petition to terminate, except that the fund is to be added to the home's restricted endowment fund, and the award herein will so provide.

There was no objection to the account which shows
a balance of principal of $1,564.13
and a balance of income of 3,477.02
making a total of $5,041.15
which, together with any further income to time of actual distribution, is awarded to the Restricted Endowment Fund of the Presbyterian Home for Aged Couples and Aged Persons, to apply the accrued and future net income each year to defray the admission costs of needy men to the home, such men to be selected by the Holy Trinity-Bethlehem Presbyterian Church, with an appropriate mention of Jonas Arner, in whose memory the trust was established.

All awards are subject to such distributions as have heretofore been properly made.

Leave is granted to the accountant to make all transfers and assignment necessary to effect distribution in accordance with this adjudication.

And now, March 12, 1974, the account is confirmed nisi.